[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
 {¶ 2} On December 20, 2002, defendant-appellant Mason Pugh was driving a dump truck. As he pulled from a gas station parking lot to make a left turn onto West North Bend Road in Cincinnati, Pugh's truck collided with a car driven by Robert Mecklenborg, Jr. Pugh was cited for improperly emerging from a private drive in violation of Cincinnati Municipal Code 506-39. Following a trial to the court, Pugh was found guilty. Pugh now appeals his conviction. He raises three assignments of error, none of which we find to be well taken.
 {¶ 3} In his first assignment of error, Pugh challenges his conviction on both the sufficiency and the weight of the evidence.
 {¶ 4} To reverse a conviction for insufficient evidence, the reviewing court must be persuaded, after viewing all the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[1] To reverse a conviction on the manifest weight of the evidence, the reviewing court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[2]
Because the trier of fact is in a better position to observe the witnesses' demeanor and to assess their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.[3] The trier of fact is free to believe all, part, or none of any witness's testimony.[4]
 {¶ 5} Pugh was charged and convicted under Cincinnati Municipal Code 506-39, which provides that "[t]he operator of a vehicle about to enter or cross a highway from any place other than another roadway shall yield the right of way to all traffic approaching on the roadway to be entered or crossed." Right of way is defined as the right of an automobile "to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle * * * approaching from a different direction into its * * * path."[5] Ohio courts have held that an operator of an automobile who fails to proceed in a lawful manner forfeits the right of way.[6]
 {¶ 6} Pugh argues that because he was the only witness at trial who was actually involved in the collision, and because he testified that Mecklenborg's vehicle was proceeding in excess of the posted speed limit at the time of the accident, his conviction was against both the sufficiency and the weight of the evidence. We disagree.
 {¶ 7} During the trial, the state presented testimony from Mecklenborg's father, who had arrived at the scene following the collision. Mecklenborg's father testified that Pugh had admitted that he had turned improperly and clipped the vehicle driven by his son. Mecklenborg's father also testified that Pugh had apologized for causing the accident and had expressed concern about losing his job. Mecklenborg's father further testified that Pugh never mentioned to him that his son had been speeding at the time of the collision.
 {¶ 8} The state also presented testimony from Cincinnati Police Officer Anthony Dawson, who investigated the incident. Officer Dawson testified that when he arrived at the scene, the vehicles had already been moved from their point of impact. Dawson testified, however, that he had found debris from Mecklenborg's vehicle in the yard across from the gas station. After talking with the parties, Officer Dawson concluded that the placement of this debris was consistent with Mecklenborg's description of the accident. Officer Dawson testified that Pugh had told him that when he was exiting from the gas station's parking lot, he had looked up and had not seen anything coming, and then he was hit by the other car. Officer Dawson did not recall Pugh making any statements about Mecklenborg's vehicle speeding.
 {¶ 9} Pugh testified, that prior to exiting from the gas station, he looked both ways and did not see any oncoming traffic. Pugh then stated that he pulled out of the parking lot and turned into the left lane of the roadway because of road construction in the right lane. Pugh testified that his truck then collided with Mecklenborg's vehicle. Pugh denied turning in an arc that was too wide. Pugh testified that, in his opinion, Mecklenborg's vehicle was traveling in excess of the speed limit at the time of the collision. During cross-examination, Pugh admitted that he had talked with Mecklenborg's father after the collision, but he denied making any statements that he was responsible for the collision. Pugh also admitted that he had never mentioned anything about Mecklenborg speeding until the day of trial.
 {¶ 10} In this case, the trial court was presented with two different versions of the events surrounding the collision. While Pugh testified that Mecklenborg had been speeding and was responsible for the collision, the state presented evidence to the contrary. Officer Dawson testified that the placement of the debris following the collision was consistent with Mecklenborg's description of the accident. Furthermore, Mecklenborg's father testified that Pugh had admitted that he had made an improper turn and caused the accident. Furthermore, Pugh admitted that he had never said that Mecklenborg had been driving too fast at the time of the collision. We cannot say the state's evidence was legally insufficient to sustain Pugh's conviction. Nor can we conclude that the trial court's decision was against the manifest weight of the evidence. Here, the trial court, upon weighing the evidence and the testimony of the parties, could have found that Pugh's statement that Mecklenborg's vehicle had been speeding was not credible given that it was not made until trial. Because the trial court judged Pugh's credibility, and it found him to be less credible than the state's witnesses, we cannot say that Pugh's conviction was against the manifest weight of the evidence. We therefore overrule his first assignment of error.
 {¶ 11} In his second assignment of error, Pugh contends the trial court violated his constitutional due-process right to a fair trial when the court paused during his testimony to handle other matters on its docket.
 {¶ 12} Both the United States Supreme Court and the Ohio Supreme Court have recognized that the Constitution guarantees a defendant the right to a fair trial, not to a perfect one.[7] R.C. 2945.10 provides the accepted order of proceedings in Ohio courts. Ohio courts in interpreting R.C. 2945.10 have held that the order of proceedings is within the sound discretion of the trial court.[8] A defendant who challenges the trial court's decision to vary the order of proceedings in R.C. 2945.10 must demonstrate that the court's decision was marked by unfairness or prejudice.[9]
 {¶ 13} In this case, the trial court interrupted the trial during the direct examination of Pugh to address other matters. After the court handled those matters, it referred to its notes, summarized its understanding of Pugh's testimony prior to the break, and directed Pugh's counsel to restart the direct examination. Pugh's counsel was then permitted to present the remainder of Pugh's case to the court, including a closing argument. Because Pugh has not demonstrated that the trial court's decision to interrupt the trial during his testimony and to handle other matters was marked by unfairness or prejudice, and because he has failed to show how the trial court's decision violated his right to due process, we overrule his second assignment of error.
 {¶ 14} In his third assignment of error, Pugh claims that the trial court erred by allowing the state to reopen its case and to admit two photographs into evidence that it had inadvertently failed to offer during its case-in-chief.
 {¶ 15} As we noted in response to the prior assignment, a trial court's decision to vary the order of proceedings is within its sound discretion.[10] A trial court also has discretion to permit evidence to be offered out of order.[11] A trial court's decision to allow a party to reopen its case to offer additional evidence will be reversed only upon a showing of an abuse of discretion.[12]
 {¶ 16} During the state's case-in-chief, Mecklenborg's father had testified about and authenticated two photographs that he had taken of the collision scene. After he had finished testifying, Mecklenborg's father inadvertently removed the photographs from the witness stand. After the defense rested, the state recalled Mecklenborg's father for rebuttal testimony. Immediately after calling him to the stand, the state offered the photographs into evidence. Defense counsel objected. The trial court admitted the photographs into evidence over defense counsel's objection. Because we cannot conclude that the trial court abused its discretion in admitting the two photographs, we overrule the third assignment of error. As a result, we affirm the judgment of the trial court.
 {¶ 17} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Sundermann, P.J., Hildebrandt and Painter, JJ.
[1] State v. Waddy (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819.
[2] State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[3] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[4] State v. Antill (1964), 176 Ohio St. 61, 197 N.E.2d 548.
[5] R.C. 4511.01(UU)(1).
[6] Beers v. Wills (1962), 172 Ohio St. 569, 179 N.E.2d 57.
[7] United States v. Hasting (1983), 461 U.S. 499, 508,103 S.Ct. 1974; State v. Lott (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293.
[8] State v. Apanovitch (1987), 33 Ohio St.3d 19, 514 N.E.2d 394.
[9] State v. Jenkins (1984), 15 Ohio St.3d 164, 473 N.E.2d 264, paragraph eleven of the syllabus, following State v. Bayless (1976),48 Ohio St.2d 73, 357 N.E.2d 1035, paragraph three of the syllabus.
[10] State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768.
[11] Columbus v. Grant (1981), 1 Ohio App.3d 96, 97, 439 N.E.2d 907;State v. Pertee (Nov. 22, 1995), 9th Dist. No. 95CA0033; State v. Smith
(March 28, 1990), 1st Dist. No. C-890073; State v. Crothers (Dec. 26, 1989), 12th Dist. No. CA89-06-007.
[12] State v. Maurer, supra, at 250.